# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JOE L. HOWARD, | ) |
| | ) |
|       Petitioner, | ) |
| v. | )    No. 2:11-cv-241-JMS-DKL |
| | ) |
| JOHN C. OLIVER, Warden, | ) |
| | ) |
|       Respondent. | ) |

**Entry Discussing Petition for Writ of Habeas Corpus**

      This cause is before the court on the petition of Joe Howard for a writ of habeas corpus. The petition is fully at issue and certain ancillary matters have also been filed.

      Whereupon the court, having considered the pleadings, the expanded records and those matters referenced above, and being duly advised, now finds that Howard's petition for writ of habeas corpus must be granted. The other relief sought in the pending motions is properly denied. These conclusions rest on the following facts and circumstances:

      1.    Howard was convicted in the United States District Court for the Eastern District of Missouri of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). His sentence was enhanced pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1). His conviction was affirmed on appeal. *United States v. Howard*, 2005 WL 1368039 (8th Cir. 2005) (unpublished). His motion for relief pursuant to 28 U.S.C. § 2255 was denied in *Howard v. United States*, 2009 WL 1211164 (E.D.Mo. 2009).

      2.    One of the predicate offenses supporting the ACCA is Howard's 1983 Missouri conviction for auto theft. Howard argued in his direct appeal that this conviction was not a qualifying "violent felony" under 18 U.S.C. § 924(e). Relying on circuit precedent at the time, this argument was rejected.

3. The precedent just referenced has been superseded based on *Begay v. United States*, 553 U.S. 137 (2008). In *Begay*, the Court clarified what constitutes a violent felony for purposes of sentence enhancement, holding that the predicate offenses for enhancement should "involve purposeful, violent, and aggressive conduct." *Id.* at 144–45. The Court explained that a "career criminal" enhancement should be reserved for those defendants whose prior offenses involve "purposeful or deliberate" conduct—not crimes of negligence or recklessness where the offender "need not have any criminal intent at all." *Id.* at 145–46; *see also United States v. Smith*, 544 F.3d 781, 784 (7th Cir. 2008) ("Defendants with prior convictions for offenses that do not involve 'purposeful or deliberate' conduct are not the type of defendants that Congress intended to include within its definition of an armed career criminal.") (citing *Begay*, 553 U.S. at 145–46).

4. The Missouri offense of auto theft "sets forth three distinct offenses with different elements: auto theft without consent, auto theft by deceit, and auto theft by coercion," and only auto theft by coercion qualifies as a violent felony under § 924(e). *United States v. Williams*, 537 F.3d 969, 973–74 (8th Cir. 2008).

5. Howard's auto theft was not committed with coercion. Pursuant to *Begay* and *Williams,* Howard's auto theft conviction no longer counts as or constitutes a violent felony for purposes of the ACCA enhancement. *Williams*, 537 F.3d at 975 ("[W]e conclude that auto theft by deception, auto theft without consent, and auto tampering are not crimes of violence for purposes of U.S.S.G. § 2K1(a)(2)."). *Williams* itself, however, has been called into question by *Sun Bear v. United States*, 644 F.3d 700, 702 (8th Cir. 2011). But the Seventh Circuit has accepted the proposition that a valid claim of improper ACCA enhancement is a claim of actual innocence for the purpose of applying rules pertaining to collateral challenges. *See Narvaez v. United States*, 674 F.3d 621, 628–30 (7th Cir. 2011). Indeed, after Howard's petition was previously dismissed, the Seventh Circuit specifically directed this court to make a determination as to the nature of the underlying auto theft conviction

6. A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974); *United States v. Bezy*, 499 F.3d 668, 670 (7th Cir. 2007). However, a petition challenging the conviction may be brought pursuant to 28 U.S.C. § 2241 only if § 2255 "would not . . . be[ ] adequate to test the legality of the conviction and sentence." *Melton v. United States*, 359 F.3d 855, 858 (7th Cir. 2004); 28 U.S.C. § 2255(e).

7. Howard presented his *Begay* claim via 28 U.S.C. § 2241 while he was confined within this District. He is currently confined at a federal prison in Texas; despite his transfer to a facility outside the Southern District of Indiana, this court retains jurisdiction over the matter, *see Al-Marri v. Rumsfeld,* 360 F.3d 707, 708-09 (7th Cir. 2004); *Miller v. United States,* 2004 WL 887420, at *1 (E.D.Pa. Apr. 23, 2004) (holding

that district court where habeas petition was filed retained jurisdiction after federal prisoner was transferred to federal correctional facility in another district).

8.  A remedy via § 2255 is "inadequate or ineffective to test the legality of [the] detention" when a legal theory that could not have been presented under § 2255 establishes the petitioner's actual innocence. *In re Davenport,* 147 F.3d 605 (7th Cir. 1998).

   a.  The actual innocence feature of the ACCA enhancement is established by *Navarez.*

   b.  Although the respondent argues that Howard could have included a *Begay* claim in his § 2255 motion, the court concludes otherwise. As has been noted, the Eighth Circuit had rejected Howard's challenge to his auto theft conviction as a qualifying violent felony under § 924(e). *Howard v. United States*, 2005 WL 1368039, *2 (8th Cir. June 10, 2005) ("This court has held that theft of a motor vehicle is a violent felony for purposes of 18 U.S.C. § 924(e).")(citing cases). In rejecting Howard's renewed challenge in the § 2255 proceeding of a different claim raised and rejected in his direct appeal, the trial court noted that "[a] defendant may not use § 2255 to re-litigate claims that have already been considered on appeal . . . ." *Howard v. United States*, 2009 WL 1211164, at *5 (E.D.Mo. May 1, 2009). There is little reason to believe that the trial court would have treated a renewed challenge to the ACCA enhancement differently.

   c.  The very narrow circumstances in which § 2241 can be used to challenge a federal defendant's sentence are thus present in Howard's case and he is entitled to relief. *Cf. United States v. Brye*, 2013 WL 1296844 (M.D.Fla. March 13, 2013).

9.  Howard's entitlement to relief undoubtedly rests on *Begay* and *Navarez.* When this Court first considered Howard's habeas petition it concluded that the *Begay* claim could not satisfy his burden of showing that a remedy via § 2255 is "inadequate or ineffective to test the legality of [the] detention." 28 U.S.C. § 2255(e). In remanding the case and referring to *Navarez*, the Court of Appeals stated: "We have held otherwise." A recent review of the *Navarez* holding by this Court's colleague in the Southern District of Illinois, Chief Judge Hendron, captures the reasoning of *Navarez*:

> The Seventh Circuit then acknowledged that while sentencing errors are generally not cognizable on collateral review, the defendant's case presented "a special and very narrow exception: A postconviction clarification in the law has rendered the sentencing court's decision unlawful." *Id.* "More precisely, it is now clear that [the defendant] never should have been classified as a career offender and never should have been subjected to the enhanced punishment reserved for such repetitive *and* violent offenders." *Id.* The court then found that although the

defendant claimed he was entitled to § 2255 relief on the basis that his career offenders status resulted in a complete miscarriage of justice and because the error resulted in a violation of his due process rights, the Court need not reach the defendant's due process claim because a miscarriage of justice entitled the defendant to relief. *Id.*

The Court then looked to *Davis v. United States,* 417 U.S. 333, 94 S. Ct. 2298, 41 L.Ed.2d 109 (1974), and *In re Davenport,* 147 F.3d 605 (7th Cir. 1998). *Narvaez,* 674 F.3d at 627–28. In *Davis,* the Supreme Court found that the petitioner was entitled to "§ 2255 relief after a subsequent interpretation of the statute, under which he was convicted, established that the his conviction and punishment were 'for an act that the law does not make criminal.'" *Narvaez,* 674 F.3d at 628 (quoting *Davis,* 417 U.S. at 346). "The Supreme Court concluded that '[t]here can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice.'" *Narvaez,* 674 F.3d at 628 (quoting *Davis,* 417 U.S. at 346) (internal quotation marks omitted). The Court also acknowledged that in *In re Davenport,* it "found that the defendant was 'indeed being held in prison for a nonexistent crime,' and, accordingly, he may be entitled to collateral relief." *Narvaez,* 674 F.3d at 628 (citing *In re Davenport,* 147 F.3d at 610).

The court then found that "[a]lthough these cases provide collateral relief when a defendant is innocent of the underlying crime, we believe that the reasoning extends to this case, where a postconviction Supreme Court ruling made clear that [the defendant] was not eligible for the categorization of a violent offender wrongfully imposed upon him." *Narvaez,* 674 F.3d at 628. The court then looked to its decision in *Welch v. United States,* 604 F.3d 408 (7th Cir. 2010), where it "found the defendant's challenge to his sentence under the ACCA 'analogous' to the situation in *Davis* where the defendant's punishment 'for an act that the law does not make criminal' resulted in 'a complete miscarriage of justice.'" *Narvaez,* 674 F.3d at 628 (quoting *Welch,* 604 F.3d at 413 n.6). Finding the definition of "violent felony" under the ACCA the same as the definition of "crime of violence" under the Sentencing Guidelines, the court found it would be inappropriate to treat the texts differently. *Narvaez,* 674 F.3d at 628 (citing *United States v. Templeton,* 543 F.3d 378, 380 (7th Cir. 2008)). Further, the court noted that "at the time of [defendant's] sentencing, the Guidelines were *mandatory.*" *Narvaez,* 674 F.3d at 628 (emphasis in original). The court found that the "case therefore involves the classifying of an individual as belonging to a subgroup of defendants, repeat violent offenders, that traditionally has been treated very differently from other offenders." *Id.* at 629. The court concluded that "[t]o classify [the defendant] as belonging to this group and therefore to increase, dramatically, the point of departure for his sentence is certainly as serious

as the most grievous misinformation that has been the basis for granting habeas relief." *Id.* Therefore, the court found a miscarriage of justice occurred. *Id.*

In response to the government's argument that § 2255 was unwarranted because the defendant's sentence was within the authorized statutory maximum for his crime, the court stated the following:

> We cannot accept this argument. The fact that [the defendant's] sentence falls below the applicable statutory-maximum sentence is not alone determinative of whether a miscarriage of justice has occurred. The imposition of the career offender status branded [the defendant] as a malefactor deserving of far greater punishment than that usually meted out for an otherwise similarly situated individual who had committed the same offense. It created a legal presumption that he was to be treated differently from other offenders because he belonged in special category reserved for the violent and incorrigible. No amount of evidence in mitigation or extenuation could erase that branding or its effect on his sentence. His designation as a career offender simply took as unchallenged a premise that was not true and gave him no way of avoiding the consequences of that designation. The sentencing court's misapplication of the *then-mandatory* § 4B1.1 career offender categorization in [the defendant's] case was the lodestar to its guidelines calculation. It placed him in a very special status for the calculation of his final sentence solely because the court ruled that he was a career offender and that the corresponding guidelines required such a status. Speculation that the district court today might impose the same sentence is not enough to overcome the fact that, at the time of the initial sentencing, [the defendant] was sentenced based upon the equivalent of a nonexistent offense. As the Supreme Court put it *Hicks v. Oklahoma,* 447 U.S. 343, 346, 100 S. Ct. 2227, 65 L.Ed.2d 175 (1980), to assume that the same sentence would have been imposed in the absence of the career offender provision is "full conjecture" that evinces in itself "an arbitrary disregard of the petitioner's right to liberty." This error clearly constitutes a miscarriage of justice. The Government is correct that [the defendant] does not have an absolute right to a lower sentence. Nevertheless, he does have an absolute right not to stand before the court as a career offender when the law does not impose that label on him.

*Id.* at 629. Therefore, the court found that the career offender status illegally increased the defendant's sentence approximately five years beyond that authorized by the statutory scheme, resulting in a miscarriage of justice. *Id.* at 630. Accordingly, the court reversed the judgment of the district court and remanded for sentencing without the imposition of a career offender status. *Id.*

*Newbern v. United States*, 2012 WL 6699118, **5-7 (S.D.Ill. Dec. 26, 2012).

10. Howard's ACCA-enhanced sentence based on a non-qualifying conviction places him in a situation similar to that of Navarez. The ACCA enhancement must be vacated and Howard must be resentenced. That shall occur, of course, in the trial court, which will also be in the best position to act on Howard's request to be conditionally released while the matter winds its way to a conclusion in the courts. Howard's objection to the respondent's filing of February 1, 2013, is overruled. That filing was reasonable and has contributed to the proper resolution of the case. The trial court shall be provided with appropriate notice of this disposition so it may proceed as warranted.

11. The two pending motions [dkt. 29, 30] related to Howard's release are also denied, without prejudice, as they are best determined by the trial court.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 04/10/2013

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Joe L. Howard
30434-044
Forth Worth Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 15330
Fort Worth, TX 76119

Electronically Registered Counsel